**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| **THE SMITH LAW FIRM, PLLC** | **PLAINTIFF** |
| **VS.** | **Case No. 3:24-cv-564-CWR-ASH** |
| **BEASLEY, ALLEN, CROW, METHVIN, PORTIS AND MILES, P.C.; ANTHONY DOW "ANDY" BIRCHFIELD, JR.; and TED GORDON MEADOWS** | **DEFENDANTS** |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR MOTION TO DISMISS OR TRANSFER**

Defendants Beasley, Allen, Crow, Methvin, Portis and Miles, P.C. ("Beasley Allen"); Anthony Dow "Andy" Birchfield; and Ted Gordon Meadows (collectively "Defendants") move to dismiss this action pursuant to Fed R. Civ. P. 12(b)(6) and 13(a) because the claims asserted by Plaintiff The Smith Law Firm, PLLC ("Smith Law") here are compulsory counterclaims to Beasley Allen's claims already asserted against Smith Law in a previously-filed action pending in Alabama federal court. Alternatively, Defendants move to transfer this case under the first-to-file rule to the Alabama federal court, where it can be consolidated with Beasley Allen's first-filed Alabama action against Smith Law.

## INTRODUCTION

This action is duplicative of a first-filed federal action already pending between these same law firms over a Joint Venture Agreement ("JV Agreement") between the firms under which they jointly prosecuted talcum powder personal injury litigation against Johnson & Johnson. The plaintiff firm in each case alleges that it fully performed its obligations under the JV Agreement but that the defendant firm breached the JV Agreement and common law duties owed to the plaintiff firm arising from their joint relationship. The plaintiff firm in each case also alleges

04603605

improprieties by the defendant firm in how it conducted its settlement negotiations with Johnson & Johnson, how it communicated with the plaintiff firm concerning those negotiations, and how it communicated with and on behalf of the firms' joint clients concerning a potential settlement under a proposed Johnson & Johnson bankruptcy plan.

Although named a defendant here, Beasley Allen previously filed suit against Smith Law and its sole member Robert Allen Smith, Jr. ("Smith") in federal court in the Middle District of Alabama ("Alabama Action") on September 10, 2024. *See* Mot. to Dismiss or Transfer Ex. 1. Nine days later, Smith Law filed this duplicative lawsuit against Beasley Allen and some of its shareholders in this Court on September 19, 2024. Docket No. 1. Both cases turn on the parties' performance under the JV Agreement and their conduct toward each other and toward their joint clients in connection with prosecuting and potentially settling the talcum powder litigation. The claims in both cases arise from the same JV Agreement and the same set of facts, and both cases require a determination of the parties' obligations and performance under the JV Agreement, the parties' duties to their clients, the parties' common law duties to each other, and whether either party breached its contractual and common law obligations to the other.

Smith Law's claims in this case are compulsory counterclaims in the Alabama Action because they present the same factual and legal issues that are central to that case. Accordingly, the Court should dismiss this case pursuant to Rules 12(b)(6) and 13(a) or stay this case while the Alabama Action proceeds. Alternatively, the Court should transfer this case to the Alabama federal court under the Fifth Circuit's well-established first-to-file rule.

## BACKGROUND

On September 10, 2024, Beasley Allen filed the Alabama Action against Smith Law, Smith, and Porter Malouf, P.A. in the United States District Court for the Middle District of

Alabama under the caption *Beasley, Allen, Crow, Methvin, Portis and Miles, P.C. v. The Smith Law Firm, PLLC, Robert Allen Smith Jr., and Porter Malouf, P.A.*, No. 2:24-CV-00582 (M.D. Ala.). *See* Mot. Ex. 1. Beasley Allen claims in the Alabama Action that Smith Law and Smith breached the JV Agreement between the law firms and fraudulently suppressed material facts to deceive Beasley Allen. Specifically, Beasley Allen alleges that Smith Law and Smith failed to share with Beasley Allen all talcum powder claimants who were joint clients under the JV Agreement, that Smith Law's and Smith's previously undisclosed financial distress caused them to place their own interests ahead of the joint clients' interests when evaluating the proposed settlement, that Smith Law and Smith negotiated unilaterally with Johnson & Johnson and made settlement commitments for which they had no authority, and that Smith Law failed to fulfill its funding and work obligations under the JV Agreement. *See id*. ¶¶ 24-25, 33-35.

Nine days later, Smith Law filed this duplicative lawsuit against Beasley Allen on September 19, 2024. Docket No. 1. Smith Law alleges in this action that Defendants Beasley Allen and its shareholders breached the same JV Agreement at issue in the Alabama Action, and asserts claims for breach of contract as well as breach of the duty of good faith and fair dealing, breach of fiduciary duty, defamation, and tortious interference with contract. *Id*. Specifically, Smith Law alleges that Defendants failed to honor Beasley Allen's obligation under the JV Agreement to cooperate with Smith Law in settling the talcum powder claims, but instead actively opposed a proposed settlement that Smith Law considered favorable to the joint clients. Smith Law alleges that Defendants did so because they placed their own financial interests ahead of the clients' interests. Smith Law also alleges that Defendants defamed it by publishing to joint clients and others their opinion that Smith Law's financial distress was causing it to place its own interests ahead of the joint clients' interests when evaluating the proposed settlement, that Defendants have

sabotaged Smith Law's efforts to gain client approval of what it considers a favorable settlement, that Defendants have interfered with Smith Law's efforts to communicate with joint clients concerning the proposed settlement, and that Defendants have not honored Beasley Allen's funding and work obligations under the JV Agreement.  *See id.* at ¶¶ 30, 33, 42, 44, 53-61.[1]

The claims in both cases thus involve the same dispute over the same JV Agreement and the same set of facts, and both cases require a determination of the parties' contractual obligations under the JV Agreement, the parties' duties to their joint clients, the parties' common law duties to each other, and whether either party breached any obligation to the other.  Smith Law's claims against Beasley Allen in this case are thus compulsory counterclaims to Beasley Allen's claims against Smith Law in the first-filed Alabama Action.  Accordingly, the Court should dismiss this second-filed case, stay it, or transfer it to the Alabama court to be consolidated with the first-filed case pending there.

## **ARGUMENT**

### I.    **This action should be dismissed or stayed because Smith Law's claims are compulsory counterclaims to Beasley Allen's claims in the Alabama Action.**

This action should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted because Smith Law's claims are compulsory counterclaims that it must bring in the Alabama Action.  Rule 13(a) of the Federal Rules of Civil Procedure requires (with exceptions not relevant here) that "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  Fed. R. Civ. P. 13(a)(1).  "The requirement that counterclaims arising out of the same transaction or occurrence

---

[1] Smith Law's complaint does not dispute that Beasley Allen filed the Alabama Action first.  To the contrary, it explicitly references and even quotes allegations from the Alabama complaint, which it calls "patently false and defamatory."  *Id*. at ¶ 43.

. . . 'shall' be stated in the pleadings was designed to prevent multiplicity of actions, and to achieve resolution in a single lawsuit all disputes arising out of common matters." *S. Constr. Co., Inc. v. Pickard*, 371 U.S. 57, 60 (1962).[2]

"Ideally, once a court becomes aware that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceedings or will dismiss the claim with leave to plead it in the prior action." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1418 (3d ed. 2024) ("Wright & Miller"); *see also Southmark Corp. v. PSI, Inc.*, 727 F. Supp. 1060, 1062 (S.D. Miss. 1989). Barring the second action from proceeding in tandem with the first one "furthers the general federal policy against multiplicity of litigation embodied in Rule 13(a)." Wright & Miller § 1418. The Court should do so here.

A claim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). Courts use four different tests to determine whether a party's claim is a compulsory counterclaim:

1) Are the issues of fact and law raised by the claim and counterclaim largely the same?
2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?
3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?
4) Is there any logical relationship between the claim and the counterclaim?

*Plant v. Blazer Fin. Servs., Inc. of Ga.*, 598 F.2d 1357, 1360 (5th Cir. 1979) (citation omitted). If *any* of the four questions is answered affirmatively, that is indicative of a compulsory counterclaim. *See id*. at 1360-61.

---

[2] The rule was later amended to change "shall" to "must." *See* Fed. R. Civ. P. 13(a); *see id.*, Committee Note on Rules—2007 Amendment ("These changes are intended to be stylistic only.").

Typically, the Fifth Circuit applies the "logical relation" test. *Plant,* 598 F.2d at 1361 ("The test which has commended itself to most courts, including our own, is the logical relation test."); *Nat'l Liability & Fire Ins. Co. v. R&R Marine, Inc.*, 756 F.3d 825, 835 (5th Cir. 2014) ("We [] employ the logical relation test to 'further define when a claim and counterclaim arise from the same transaction.'") (footnote omitted); *United States v. Aronson*, 617 F.2d 119, 121 (5th Cir. 1980) ("In this circuit, we have adopted the 'logical relationship' test.") (citations omitted). The logical relationship test "permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits." *Plant*, 598 F.2d at 1361 (citation and internal quotation marks omitted). A logical relationship exists between the claim and counterclaim "when the counterclaim arises from the same aggregate of operative facts in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Id*. (citation and internal quotation marks omitted); *see also McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 303 (5th Cir. 1993) (analyzing whether "the original claim and counterclaim arise from the same aggregate of operative fact").

Smith Law's claims in this action and Beasley Allen's claims in the first-filed Alabama Action unquestionably arise from the same aggregate of operative facts. Beasley Allen claims in the Alabama Action that Smith Law breached the JV Agreement by failing to meet its funding obligations under the Agreement, by failing to perform its share of the work due under the Agreement, by failing to disclose all claimants to be treated as joint clients under the Agreement, by failing to share fees due under the Agreement, and by failing to cooperate with Beasley Allen in the effective prosecution of talcum powder litigation as required by the Agreement. Mot. Ex. 1 at ¶ 39. Beasley Allen also claims that Smith Law breached its duty of loyalty by failing to disclose to Beasley Allen its financial distress and its inability or unwillingness to contribute its share of

the work due and litigation expenses incurred under the Agreement, by soliciting and representing additional talc powder claimants outside of the Agreement, by failing to disclose and then secretly increasing its exorbitant debt obligations to a litigation funding entity, by secretly negotiating settlement terms with Johnson & Johnson without Beasley Allen's knowledge or participation, and by placing its own financial interests ahead of those of the joint venture and its clients. *Id*. at ¶ 43.

On the other hand, Smith Law's claims in this case include that Beasley Allen allegedly breached the same JV Agreement by failing to meet its funding obligations under the Agreement, by failing to perform its share of the work due under the Agreement, by failing to cooperate with Smith Law in the effective prosecution of talcum powder litigation as required by the Agreement, by frustrating Smith Law's efforts to communicate with joint clients, and by placing its own financial interests ahead of those of the joint venture and its clients. Docket No. 1 at ¶ 66. Smith Law claims that through this same alleged conduct Beasley Allen breached its duty of good faith and fair dealing and its fiduciary duty to Smith Law. Id. at ¶¶ 70, 75.

The overlap of the facts and issues presented in both the first-filed Alabama Action and this later-filed action make plain there is a logical relationship between the two actions. *See North Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 205 (5th Cir. 2015) (logical relationship existed—and Cigna's counterclaims were thus compulsory—because "North Cypress's claims and Cigna's counterclaims arise from the same 'core facts,'—North Cypress's prompt pay discount.") Similarly here, Beasley Allen's claims in the Alabama Action and Smith Law's claims in this case arise from the same "core facts"—the JV Agreement and the parties' performance thereunder. Also instructive is *Park Club, Inc. v. Resolution Trust Corp.*, 967 F.2d 1053 (5th Cir. 1992). There, the court recognized that a counterclaim is compulsory if it "'arises out of the subject matter of plaintiff's legal claim.'" *Id*. at 1057 (quoting 5 James W. Moore et

al., *Moore's Federal Practice* ¶ 38.39[2], at 38–367 (2d ed. 1992)).  The *Park* court had "little difficulty in concluding" that RTC's claim for breach of a promissory note for an interim loan was a compulsory counterclaim in the borrower's action against the lender for breach of an agreement to make the interim loan permanent and against RTC for tortious interference with that agreement. *Id*. at 1058.  The court explained that both the borrower's claim against RTC and RTC's counterclaim against the borrower "regard the same instruments and transactions, and a jury would hear substantially the same facts in regard to both."  *Id*.

Similarly here, Beasley Allen's claims in the Alabama Action and Smith Law's claims here both concern the same instrument and transactions between the two firms, each firm's conduct in connection with the proposed settlement with Johnson & Johnson, each party's contractual obligations and performance under the JV Agreement, and the common law duties owed by each firm to the other.  For these reasons, this Court should "stay its own proceedings or . . . dismiss the claim with leave to plead it in the prior action."  Wright & Miller § 1418; *accord Southmark Corp. v. PSI, Inc.*, 727 F. Supp. 1060, 1062 (S.D. Miss. 1989) ("Ordinarily then, where a claim is filed in one court and the defendant in the action, instead of asserting a counterclaim, institutes a second action in which that counterclaim is the basis of the complaint, the court in which the second claim is filed will either dismiss the action or stay it pending resolution of the first action.") (citing Wright & Miller § 1418; *Pickard*, 371 U.S. at 60).

Unlike in *Southmark*, the first-filed action here was not filed solely "to deprive the potential plaintiff of its choice of forum."  *Id*. at 1063.  Beasley Allen did not file the Alabama Action as an anticipatory declaratory judgment action to win a "race to the courthouse," *id*., nor did it deceptively file the Alabama Action while the parties were in the midst of ongoing settlement negotiations.  *Id*.  To the contrary, Beasley Allen openly filed the Alabama Action, in a forum for

which both personal jurisdiction and venue are unquestionably proper, to be made whole for Smith Law's and Smith's breaches of the JV Agreement and their common law duties owed to Beasley Allen. The Court therefore should not hesitate to dismiss or stay this case in favor of the Alabama Action.

Although *Southmark* followed the exception rather than the rule, numerous courts have dismissed or stayed the second-filed action under these circumstances. *See, e.g.*, *Adam v. Jacobs*, 950 F.2d 89, 93-94 (2d. Cir. 1991) (compulsory counterclaim in second-filed action should be dismissed and transferred to court in which original action was filed); *Emergy Inc. v. The Better Meat Co*., 2022 WL 7101973 at *11 (E.D. Cal. Oct. 12, 2022) (dismissing Emergy's action and directing Emergy to file its compulsory counterclaims in first-filed action); *Pi Innovo, LLC v. Advanced Green Innovations, LLC*, 2016 WL 6246401 at *2 (E.D. Mich. Mar. 21, 2016) (staying second-filed action until decision reached in first-filed action); *Skyline Steel, LLC v. Pilepro, LLC*, 2015 WL 999981 at *7 (S.D.N.Y. Mar. 5, 2015) (dismissing claims in second-filed action).

This is what the Court should do here. Smith Law's claims in this action are compulsory counterclaims because they turn on the same factual and legal issues that will determine the outcome of the first-filed Alabama Action. The Court therefore should either dismiss Smith Law's claims with leave to refile them as counterclaims in the Alabama Action, or should stay this case pending further proceedings in the Middle District of Alabama.

## II. This action alternatively should be transferred to the Alabama federal court under the first-to-file rule.

Even if the Court determines Smith Law's claims are not compulsory counterclaims that must be dismissed or stayed in favor the Alabama Action, the Court nevertheless should transfer this action to the Alabama federal court under the "first-to-file rule" rule. *Bossier v. Freese & Goss, PLLC*, 2017 WL 11496649, at *1 (S.D. Miss. Jun. 1, 2017). "The Fifth Circuit adheres to

the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (citations omitted); *see e.g. Bruce Oakley, Inc. v. Vidalia Dock & Storage Co.*, 2016 WL 5374132 (S.D. Miss. Sept. 26, 2016).  Thus, "[w]hen related cases are pending before two federal courts, the first-to-file rule instructs the court with the later-filed action to transfer it to the first-filed forum." *Bossier*, 2017 WL 11496649, at *2 (quoting *White v. Peco Foods, Inc.*, 546 F. Supp. 2d 339, 341 (S.D. Miss. 2008) (citing *Am. Bankers Life Assurance Co. of Fla. v. Overton*, 128 F. App'x 399, 403 (5th Cir. 2005)).  "Though discretionary, '[t]he rule rests on principles of comity and sound judicial administration.'"  *Bossier*, 2017 WL 11496649, at *2 (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)).  "'The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'" *Id.* (quoting *W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of the ILA*, 751 F.2d 721, 729 (5th Cir. 1985)).

Courts in the Fifth Circuit thus apply the first-to-file rule when the two cases substantially overlap.  *Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677-78 (5th Cir. 2011).  To determine whether the cases substantially overlap, the Fifth Circuit considers factors such as whether the "core issues" are the same or whether "much of the proof adduced would likely be identical." *Id.* at 678 (cleaned up).  *Bossier* is particularly instructive for this analysis.  There, "th[e] lawsuit ar[o]se[] out of the working relationship between Plaintiff Sheila M. Bossier, a Mississippi-based attorney, and Freese & Goss, PLLC ("F&G"), a Texas-based law firm."  2017 WL 11496649, at *1.  F&G and its principals first filed suit against Bossier and her firm in Texas seeking a declaratory judgment that Bossier and her firm were not due any additional

compensation from the F&G parties under their working agreement.  *Id*.  Bossier then filed suit against the F&G parties in Mississippi claiming they'd failed to pay her all the compensation due under the agreement.  *Id*.  The F&G parties then moved to dismiss Bossier's Mississippi claims as compulsory counterclaims to the Texas litigation or to transfer the case to Texas under the first-to-file rule.  *Id*.  The court declined to dismiss, but found transfer proper under the first-to-file rule.  *Id*.

The court reasoned that "it is plain that the subject matter of this case and the Texas case 'might substantially overlap,' causing a high risk of inconsistent results and duplicative efforts."  *Id*. at *2 (quoting *Cadle Co.*, 174 F.3d at 606).  "At bottom, both lawsuits concern the Bossier parties' rights to remuneration above that which they have already received for their work for F&G.  And the Bossier parties have now filed as counterclaims in the Texas lawsuit many of the exact claims they assert here.  So under the first-filed rule, the 'proper course' is for this Court to transfer the case to the Texas district court."  *Id*. (quoting *Save Power Ltd.*, 121 F.3d at 950).

The court rejected Bossier's argument "that there is not substantial overlap because the Texas case is limited to fees owed to them for Mississippi-based PCB litigation whereas this case involves the Bossier parties' claims to fees and bonuses springing from a much broader universe of F&G cases," holding that "at bottom, both lawsuits concern the Bossier parties' rights arising out of their relationship with F&G.  The first-to-file rule 'does not . . . require that [the] cases be identical.'"  *Id*. (quoting *Save Power Ltd.*, 121 F.3d at 950).  The court also rejected Bossier's reliance on *Southmark* for support that "compelling circumstances militate against applying the first-to-file rule here."  *Id*. at *3.  The court rejected this argument because "the Bossier parties have not shown that the F&G parties filed the Texas lawsuit 'in an obvious attempt to deprive [the Bossier parties] of [their] choice of forum.'" or as "'improper anticipatory litigation or otherwise

abusive 'forum shopping.'" *Id*. (citations omitted). "In short, no compelling circumstances require the Court to disregard the first-to-file rule. This case will be transferred to the Texas district court." *Id*.

The same result follows here. Beasley Allen filed the Alabama Action nine days before Smith Law filed this action. "[T]he two pending actions [are] so duplicative" and "involve such substantially similar issues that one court should decide the subject matter of both actions." *Nabors Drilling USA, L.P. v. Markow, Walker, P.A.*, 451 F. Supp. 2d 843, 845 (S.D. Miss. 2006) (citation and internal quotation marks omitted). Both lawsuits concern the parties' compliance with their obligations under the JV Agreement and their common law duties to each other arising from that Agreement. And there is nothing to suggest that Beasley Allen was guilty of improper forum-shopping or otherwise abusive tactics in filing the Alabama Action. The parties should not be required to conduct overlapping discovery here and in the Alabama Action simultaneously. And this Court should not be thrust into a race with the Middle District of Alabama to decide the critical legal and factual issues that are dispositive of both actions. Accordingly, should the Court decline to dismiss or stay this action, it should transfer the action to the Alabama federal court, where it can be consolidated with the first-filed Alabama Action.

## CONCLUSION

Smith Law's claims in this action arise from the same operative facts at issue in Beasley Allen's first-filed Alabama Action. Smith Law should not have filed those claims here, but should have filed them as compulsory claims in the first-filed Alabama Action. Accordingly, the Court should dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) and 13(a) or stay it while the Alabama Action proceeds. Alternatively, the Court should transfer this case under the first-to-file

04603605

12

rule to the Alabama federal court to avoid the unnecessary duplication of efforts and risk of inconsistent rulings that would result from allowing both actions to procced separately.

      Dated: December 31, 2024.

                                    Respectfully submitted,

                                      **BEASLEY, ALLEN, CROW, METHVIN, PORTIS AND MILES, P.C.; ANTHONY DOW "ANDY" BIRCHFIELD, JR.; and TED GORDON MEADOWS**

By:      /s/ *R. David Kaufman*
                    R. David Kaufman,
                    One of Their Attorneys

OF COUNSEL:

R. David Kaufman, MSB No. 3526
M. Patrick McDowell, MSB No. 9746
Kaelyn N. Mack, MSB No. 106493
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
190 E. Capitol Street (39201)
P.O. Drawer 119
Jackson, MS 39205
Telephone: (601) 948-3101
Facsimile:  (601) 960-6902
dkaufman@brunini.com
pmcdowell@brunini.com
kmack@brunini.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

      Dated:  December 31, 2024.

                    /s/ *R. David Kaufman*
                    R. David Kaufman

04603605